**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| IN RE PATTERN ENERGY GROUP INC. SECURITIES LITIGATION | C.A. No. 20-275-MN-JLH |

**REPORT & RECOMMENDATION**

In this action challenging the purchase of Pattern Energy Group Inc. by the Canada Pension Plan Investment Board, Defendants move to dismiss the Second Consolidated Amended Class Action Complaint ("SAC"). (D.I. 76; D.I. 78; D.I. 79.) As discussed below, I conclude that the SAC plausibly alleges claims under Sections 14(a) and 20(a) of the Securities Exchange Act of 1934. However, Plaintiffs' state law claims should be dismissed.

## I.   BACKGROUND[1]

### A.     The Parties

This dispute arises from an agreement between Defendant Pattern Energy Group Inc. ("Pattern Energy") and the Canada Pension Plan Investment Board ("CPPIB") to merge Pattern Energy with a subsidiary of CPPIB. That agreement was announced on November 4, 2019. Plaintiffs are investment funds that owned Pattern Energy stock at the time of the merger. (SAC

---

[1] My prior Report and Recommendation summarized the allegations in Plaintiffs' previous pleading (the Consolidated Amended Class Action Complaint (D.I. 26)). *See In re Pattern Energy Grp. Inc. Sec. Litig.*, No. 20-275-MN-JLH, 2021 WL 311257 (D. Del. Jan. 28, 2021) (recommending dismissal of complaint with leave to amend), *report and recommendation adopted*, 2021 WL 765760 (D. Del. Feb. 26, 2021). The facts recited in this section are taken from the allegations in the Second Consolidated Amended Class Action Complaint (D.I. 76 ("SAC")), documents it references or relies on, and matters of which the Court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

¶ 40.)  Plaintiffs were all advised by their investment advisor, Water Island Capital, LLC ("Water Island Capital").  (*Id.*)

At all times relevant here, Defendant Pattern Energy was a Delaware Corporation with "principal executive offices" in San Francisco, California.  (*Id.* ¶ 41, App'x A.)  Its business was operating wind and solar power facilities in the United States, Canada, and Japan.  (*Id.*)  Pattern Energy acquired the facilities that it operated primarily by purchasing them from nonparty Pattern Energy Group 2 LP ("Pattern Development") and its predecessor company.  (*Id.* ¶ 41.)  Pattern Development was a Delaware limited partnership with "principal executive offices" in San Francisco.  (*Id.* ¶ 74, App'x A.)  Its business was developing renewable energy and transmission assets.  (*Id.*)

Defendant Riverstone Holdings LLC ("Riverstone Holdings") is a Delaware limited liability company and is an energy- and power-focused private investment firm.  (*Id.* ¶ 45, App'x A.)  Defendant Riverstone Pattern Energy II Holdings, LP ("Riverstone PE") is a Delaware limited partnership that owned an equity stake in Pattern Development until the merger.  (*Id.* ¶ 46, App'x A.)

According to the SAC, Riverstone Holdings and its affiliates (collectively, "Riverstone") held a controlling 70% equity interest in Pattern Development before the merger.  (*Id.* ¶¶ 46, 51, App'x A.)  The remaining equity interest of Pattern Development was owned as follows: Pattern Energy held a 29% equity stake, and most of the remaining 1% was held by Pattern Development's management, many of whom also had high-level management roles at Pattern Energy.  (*Id.* ¶¶ 24, 43, 52, App'x A.)  At the time of the merger, Pattern Development had a consent right that limited Pattern Energy's ability to transfer its interest in Pattern Development to any third party without the consent of Pattern Development.  (*Id.* ¶¶ 47, 51, 52, App'x A; D.I. 82, Ex. B ("Proxy Stmt.")

at 36.)  Because Riverstone held a controlling equity stake in Pattern Development, Riverstone controlled the consent right.  (SAC ¶ 47, App'x A.)

The individuals named as defendants in the SAC include the members of Pattern Energy's Board at the time of the merger ("Board Defendants") and six members of Pattern Energy's management team ("Officer Defendants").  The Board Defendants are Alan R. Batkin, Edmund John Philip Browne, Richard A. Goodman, Douglas G. Hall, Patricia M. Newson, Mona K. Sutphen, and Michael Garland.  (SAC ¶¶ 64–70.) The Officer Defendants are Michael Garland, Hunter Armistead, Daniel Elkort, Michael Lyon, Esben Pedersen, and Christopher Shugart.  (*Id.* ¶¶ 53–59.)  Defendant Garland was the CEO of both Pattern Energy and Pattern Development as well as a member of the boards of directors at both companies.  (*Id.* ¶¶ 54, 60.)

### B.    The Proxy Statement

Plaintiffs' federal claims are all based on their contention that the proxy materials sent to Pattern Energy shareholders in connection with its merger with CPPIB contained material misrepresentations and omissions.  The February 4, 2020 proxy statement (the "Proxy Statement") is 138 pages, single-spaced, plus attachments.[2]  It contains an 18-page summary of the merger negotiations.  (Proxy Stmt. at 36–54.)  Below I summarize the portions of the Proxy Statement and the corresponding allegations in the SAC that are most relevant to the Court's resolution of the pending motions.

On June 5, 2018, Pattern Energy's Board decided to begin exploring "strategic opportunities," including opportunities to merge.  (*Id.* at 36–37.)  The Board appointed a Special Committee composed of independent directors to conduct its strategic review, and Defendant

---

[2] While Plaintiffs did not attach to their pleading copies of the SEC filings on which their Exchange Act claims are based, no one disputes that the Court may properly consider those filings when ruling on the pending motions.

Batkin was appointed as Chairperson. (*Id.*) The Special Committee retained outside legal counsel, and it retained Evercore Group LLC ("Evercore") and Goldman Sachs & Co. as its financial advisors. (*Id.* at 37, 40.)

Over the next year, the Special Committee engaged with several bidders. At an October 29, 2018 meeting of the Special Committee, Defendant Garland—who was not a member of the Special Committee—summarized an approach "he had received from representatives of a large alternative asset manager (referred to [in the Proxy Statement] as 'Party A') which owns a substantial interest in a company in the alternative energy industry (referred to [in the Proxy Statement] as 'Company A')." (Proxy Stmt. at 37; SAC ¶ 82.) According to the SAC, Party A was Brookfield Renewable Partners L.P. ("Brookfield") and Company A was TerraForm Power, Inc. ("TerraForm"), in which Brookfield owned an equity stake. (SAC ¶ 82.) The Special Committee asked Garland to reach out to representatives of Brookfield to see if they would provide a preliminary written proposal for a strategic transaction. (Proxy Stmt. at 37–38.)

Pattern Energy's discussions with Brookfield continued for the better part of a year. (*Id.* at 38–53; SAC ¶¶ 82–107.) On February 21, 2019, Brookfield sent "a preliminary non-binding term sheet outlining high-level proposed terms for a potential transaction" involving the acquisition of Pattern Energy by TerraForm in exchange for TerraForm stock at an at-market exchange ratio. (Proxy Stmt. at 39; SAC ¶ 83.) According to the SAC, Brookfield's proposal was not conditioned on an acquisition of Pattern Development. (SAC ¶ 83.) The Special Committee discussed the proposal at meetings in February and March 2019. (Proxy Stmt. at 39; SAC ¶¶ 84–85.) The SAC alleges that, at those meetings, the Special Committee noted the potential benefits of a transaction with Brookfield, including increased access to capital. (SAC ¶¶ 84–85.) However, Defendants Garland and Elkort warned the Special Committee that despite the potential for

"significant synergies" in a Brookfield transaction, the need for Riverstone's support was important because Pattern Development's consent right would "likely be implicated." (*Id.* ¶ 85.)

According to the SAC, "Pattern Energy responded to the Brookfield bid with a [March 11, 2019] term sheet restructured by Special Committee advisors Paul Weiss[, Rifkind, Wharton & Garrison LLP] and Evercore." (SAC ¶ 86.) The "new term sheet was structured as a merger of TerraForm into a subsidiary of Pattern Energy." (*Id.*) That structure would have allegedly left Pattern Energy as the surviving entity, thereby eliminating the need for Pattern Development's consent to the transaction. (*Id.*)

Beginning in April 2019, some of the discussions between Pattern Energy and Brookfield included Riverstone. (Proxy Stmt. at 40.) At a meeting between Defendant Batkin, Pattern Energy management, Brookfield representatives, and Riverstone representatives on April 16, 2019, Riverstone indicated that it would be open to considering proposals from Brookfield that included the acquisition of Pattern Development as well as Pattern Energy. (*Id.*) On May 31, 2019, Pattern Energy received a revised term sheet from Brookfield for an all-stock acquisition of Pattern Energy by TerraForm that reflected a 15% merger premium. (Proxy Stmt. at 41; SAC ¶ 87.) The term sheet proposed that the combined company would concurrently purchase Pattern Development at a price to be negotiated by Pattern Energy and Riverstone, such that Riverstone would be cashed out and no longer have any ownership. (Proxy Stmt. at 41; SAC ¶ 87.)

While the discussions with Brookfield (and others) continued, Pattern Energy was also in talks with CPPIB. On June 28, 2019, CPPIB sent the Special Committee a non-binding proposal to purchase the outstanding shares of Pattern Energy common stock for $25.50 per share in cash, "conditioned on an agreement being reached between CPPIB and Riverstone for the acquisition of

Pattern Development." (SAC ¶ 88; Proxy Stmt. at 42.) According to the SAC, the offer "reflected a 11% merger premium based on Pattern Energy's stock price on that date." (SAC ¶ 88.)

On July 23, 2019, Brookfield submitted a revised proposal for an all-stock merger between TerraForm and Pattern Energy. (Proxy Stmt. 43–44; SAC ¶ 90.) Brookfield again proposed to acquire Pattern Energy in an all-stock transaction at an exchange ratio to reflect an implied 15% premium to the price of Pattern Energy stock, with the combined entity purchasing Pattern Development. Brookfield also indicated that it would be willing to acquire Pattern Energy at a 20% premium without also acquiring Pattern Development. (Proxy Stmt. 43–44; SAC ¶ 90.) According to the SAC, both of those bids "were superior to CPPIB's $25.50 bid." (SAC ¶ 90.) At a meeting on July 31, 2019, the Special Committee recognized that Brookfield's offers exceeded CPPIB's current offer. (SAC ¶ 92.)

On August 16, 2019, CPPIB provided the Special Committee with a revised proposal to acquire Pattern Energy common stock for between $26.25 and $26.50 in cash per share and to purchase the equity interests in Pattern Development not owned by Pattern Energy from Riverstone. (Proxy Stmt. at 45; SAC ¶ 94.) The SAC alleges that CPPIB's August 16 offer was "still well below Brookfield's then current bid." (SAC ¶ 94.)

On August 26, 2019, Brookfield made a revised proposal. (Proxy Stmt. at 46.) The SAC alleges that Brookfield's proposal letter revealed information not disclosed in the Proxy Statement, including that the Special Committee's advisors had told Brookfield (1) that the Board no longer supported a transaction that internalized Pattern Development and (2) that Riverstone would use its consent right to block any deal in which TerraForm became the parent company of Pattern Energy. (SAC ¶ 99.) Accordingly, Brookfield proposed to acquire Pattern Energy through an all-stock merger between Pattern Energy and TerraForm, with Pattern Development remaining a

separate entity.  (Proxy Stmt. at 46; SAC ¶ 99.)  Brookfield's proposal contemplated that Pattern Energy would acquire TerraForm, leaving Pattern Energy as the surviving entity.  That deal structure, according to the SAC, would have eliminated the need for Riverstone's consent to the transaction.  (SAC ¶ 99.)

The SAC alleges that, on August 28, 2019, "Evercore informed the Special Committee that Brookfield's proposal implied a merger price of $34 per share of Pattern Energy common stock as of that date, and represented a 45% merger premium for Pattern Energy Shareholders," making it "superior[]" to CPPIB's then-current bid.  (SAC ¶¶ 100, 113, 128.)  The Proxy Statement reported of the same meeting that Evercore had presented an analysis of the August 26 Brookfield offer yielding premium ranges of "between 1.4% and 28.8% . . . based on an expected range of trading prices for shares of the combined company's common stock post-transaction and on certain other assumptions."  (*Id.* ¶¶ 111, 113; Proxy Stmt. at 46.)

Defendant Garland, Brookfield representatives, and Riverstone representatives met on September 4, 2019 to discuss Brookfield's August 26 proposal.  (Proxy Stmt. at 48.)  At the meeting, Brookfield and Riverstone "indicated that they would not be supportive of a combination of Pattern [Energy] and [TerraForm] absent certain changes to the agreements governing the commercial relationship between Pattern [Energy] and Pattern Development."  (*Id.*)  The SAC alleges that, after the meeting, Defendant Batkin asked Riverstone "to provide Brookfield with a list of proposed new governance terms between Pattern Energy and Pattern Development."  (SAC ¶ 146.)

The SAC alleges that, at a Special Committee meeting on September 29, 2019, Defendant Batkin reported that Riverstone had provided Brookfield with a "fairly expansive" list of terms, and that Brookfield had indicated that it would be "willing and able to sign onto the terms of

[Brookfield's] letter as-is." (*Id*.) The Proxy Statement did not disclose that development. (Proxy Stmt. at 50.) The Proxy Statement did disclose that Batkin thereafter informed Brookfield that, although it had proposed a competitive offer to acquire Pattern Energy, Brookfield would need to "confirm, either that (1) [Brookfield's] proposal was not conditioned on [it] entering into agreements with Pattern Development and Riverstone or (2) [Brookfield] had negotiated definitive drafts of such agreements with Pattern Development and Riverstone." (Proxy Stmt. at 51.)

On October 17, 2019, Evercore, at the request of the Special Committee, asked Brookfield and CPPIB to submit proposed definitive documentation by October 23, 2019 and "best and final" offers by October 28, 2019. (*Id.* at 51; SAC ¶¶ 105.) On October 28, 2019, CPPIB submitted a final all-cash offer of $26.75 per share for the outstanding shares of Pattern Energy. (Proxy Stmt. at 52; SAC ¶ 105.) CPPIB's offer—which was ultimately accepted—contemplated a concurrent acquisition of Pattern Development. (Proxy Stmt. at 53–54.)

Also on October 28, 2019, Brookfield reaffirmed its offer to acquire Pattern Energy in an all-stock transaction involving the combination of Pattern Energy and TerraForm, with Pattern Development remaining a separate entity. (Proxy Stmt. at 52; SAC ¶ 105.) Brookfield did not submit transaction documentation, and the Special Committee agreed to extend the deadline to October 30, 2019. (Proxy Stmt. at 52.) The Special Committee also asked Brookfield to confirm that it would be willing to proceed with a merger regardless of any agreement (or the lack thereof) between Brookfield and Riverstone. (*Id.*) The Proxy Statement did not report, however, that Brookfield told Pattern Energy on October 28, 2019 that it "could agree" to all of Riverstone's proposed terms for the agreements. (SAC ¶¶ 148–149.)

On October 30, 2019, Brookfield submitted a draft merger agreement that conditioned closing on it entering into agreements with Riverstone. (Proxy Stmt. at 52.) Later that day, counsel

for the Special Committee communicated to Brookfield that it would need to finalize any arrangements with Riverstone that Brookfield believed necessary and to submit executable transaction documentation prior to close of business on November 2, 2019.  (*Id.*)  Brookfield indicated that it believed it could negotiate such agreements within 30 days, but the Special Committee reiterated its request for executable transaction documentation by November 2.  (*Id.*) According to the SAC, the Proxy Statement's failure to report Brookfield's willingness to agree to Riverstone's proposed terms "left shareholders with the misleading impression that the failures [to finalize contractual arrangements with Riverstone] were Brookfield's . . . ."  (SAC ¶ 149.)

The Special Committee met on October 31, 2019 to discuss the bids from CPPIB and Brookfield.  (Proxy Stmt. at 52; SAC ¶ 106.)  The SAC alleges that, at the meeting, Evercore told the Special Committee that "Brookfield's offer provided Pattern Energy shareholders far greater per share consideration than CPPIB.  Specifically, Evercore concluded that Brookfield's offer had an implied value of up to $32.94 per share of Pattern Energy common stock (compared to CPPIB's offer of $26.75 per share) if the combined company maintained TerraForm's dividend policy and traded at TerraForm's 5.72% dividend yield in 2020."  (SAC ¶ 106.)

On November 2, 2019, Brookfield told the Special Committee that it would not be submitting a final proposal.  (Proxy Stmt. at 53; SAC ¶¶ 149–150.)  On November 3, 2019, Evercore opined to the Special Committee that CPPIB's offer of $26.75 per share was fair from a financial point of view.  (Proxy Stmt. at 53.)  The Special Committee recommended that the Board approve the merger, which it did.  (Proxy Stmt. at 53; SAC ¶ 107.)

The Board filed with the Securities and Exchange Commission (SEC) a Schedule 14A Definitive Proxy Statement on February 4, 2020, recommending that the shareholders vote in favor of the proposed merger with CPPIB.  It explained that, pursuant to the merger transaction, Pattern

Energy would be merged with a newly formed affiliate of CPPIB. (Proxy Stmt. at 53–54, 74.) In exchange, shares of Pattern Energy Company Common Stock would be converted to the right to receive $26.75 in cash. (Proxy Stmt. at 53.) The Proxy Statement further disclosed that, pursuant to a concurrent transaction—dubbed the "Contribution Agreement"—the Management Defendants and Riverstone would be contributing their respective stakes in Pattern Development to an affiliate of CPPIB in exchange for equity interests in the affiliate. (Proxy Stmt. at 74.) The combined result of the Pattern Energy merger and the acquisition of Pattern Development pursuant to the Contribution Agreement was that Pattern Energy and Pattern Development would be under the common ownership of CPPIB. (Proxy Stmt. at 74; SAC App'x A.)

The Proxy Statement represented that "after consultation with its financial advisors, the Special Committee believed" that the proposed merger consideration "represented the best value reasonably available to [the] stockholders." (Proxy Stmt. at 55; SAC ¶ 81.) Similarly, in a February 26, 2020 Form 8-K, Pattern Energy stated that [t]he Special Committee sought and believes it obtained the highest price reasonably available for Pattern Energy." (*See* Pattern Energy Grp., Inc., Current Report, Ex. 99.1 (Form 8-K) (Feb. 26, 2020)[3]; SAC ¶ 81.)

The Proxy Statement garnered negative attention, including from Plaintiffs' financial advisor, Water Island Capital. Two proxy advisory services, Institutional Shareholder Services and Glass, Lewis & Co., LLC, both recommended that Pattern Energy shareholders vote against the proposed merger. (SAC ¶¶ 20, 127, 128.) The shareholders nevertheless voted to approve the merger at a special meeting on March 10, 2020. (SAC ¶ 170.)

---

[3] The February 26, 2020 Form 8-K is available online via the SEC's EDGAR database at https://www.sec.gov/Archives/edgar/data/1561660/000095014220000593/eh2000383_ex9901.htm (last visited Jan. 26, 2022).

### C.     Procedural History

Plaintiffs filed this action on February 25, 2020, two weeks before the merger was approved via shareholder vote.  (D.I. 1.)   On May 22, 2020, Plaintiffs filed a Consolidated Amended Class Action Complaint, alleging violations of federal securities laws and state law. (D.I. 26.)  Defendants moved to dismiss the Consolidated Amended Class Action Complaint.  (D.I. 48; D.I. 50.)  I recommended that the Court grant the motions to dismiss.  *See In re Pattern Energy*, 2021 WL 311257 (D.I. 68).   On February 26, 2021, the Court adopted my report and recommendation and dismissed the Consolidated Amended Class Action Complaint over Plaintiffs' objections.  *See In re Pattern Energy*, 2021 WL 765760 (D.I. 74).

On March 29, 2021, Plaintiffs filed a Second Consolidated Amended Class Action Complaint.  (D.I. 76.)  The SAC adds new factual allegations supporting Plaintiffs' claims.  Count I alleges violations of Section 14(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78n(a), against Pattern Energy, the Board Defendants, and the Officer Defendants.  Count II alleges violations of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), against the Board Defendants and the Officer Defendants.  Count III is a state law breach of fiduciary duty claim against the Board Defendants and the Officer Defendants.  Count IV alleges that Riverstone is liable for aiding and abetting the breaches of fiduciary duties.

Defendants again filed motions to dismiss.  (D.I. 78 (Pattern Energy, Board Defendants, and Officer Defendants); D.I. 79 (Riverstone).)  Both motions are fully briefed.  (D.I. 80; D.I. 81; D.I. 82; D.I. 83; D.I. 84; D.I. 86; D.I. 87.)  I heard oral argument on September 2, 2021 ("Tr. __").

## II.   LEGAL STANDARDS

### A.   Motions to Dismiss for Failure to State a Claim

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   A claim is plausible on its face when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).   A possibility of relief is not enough. *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In determining the sufficiency of the complaint, I must assume all "well-pleaded facts" are true but need not assume the truth of legal conclusions. *Id.* at 679.   "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (internal quotation marks omitted).

### B.   Exchange Act Pleading Requirements

Section 14(a) of the Exchange Act "makes it unlawful to solicit a proxy 'in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors.'" *Jaroslawicz v. M&T Bank Corp.*, 962 F.3d 701, 709 (3d Cir. 2020) (quoting 15 U.S.C. § 78n(a)(1)) (alteration in original).   SEC Rule 14a-9, in turn, prohibits any proxy solicitation

> containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading . . . .

17 C.F.R. § 240.14a-9(a).

Liability under Section 14(a) requires a showing that "(1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." *Jaroslawicz*, 962 F.3d at 710 (quoting *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 228 (3d Cir. 2007)).   However, an omission in a proxy statement can violate Section 14(a) only "where '[(a)] the SEC regulations specifically require disclosure of the omitted information in a proxy statement, or [(b)] the omission makes other statements in the proxy statement materially false or misleading.'"   *Id.* (quoting *Seinfeld v. Becherer*, 461 F.3d 365, 369 (3d Cir. 2006)) (alterations in original).   In other words, absent an allegation that a defendant failed to make a disclosure specifically required by SEC regulations, a Section 14(a) plaintiff must demonstrate that a proxy statement is either materially false or misleading standing alone or is materially misleading in light of other facts that were not disclosed (*i.e.*, omitted).   *Hysong v. Encore Energy Partners LP*, No. 11-781, 2011 WL 5509100, at *6 (D. Del. Nov. 10, 2011).

Section 14(a) claims are subject to certain heightened pleading requirements set forth in the Private Securities Litigation Reform Act. *Kooker ex rel. Hecla Mining Co. v. Baker*, No. 19-1299-CFC, 2020 WL 6287248, at *5–6 (D. Del. Oct. 27, 2020); *In re U.S. West, Inc. Sec. Litig.*, 201 F. Supp. 2d 302, 305 (D. Del. 2002).   The PSLRA requires that a Section 14(a) claim premised on an alleged false or misleading proxy statement must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation

regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1); *see also Hysong*, 2011 WL 5509100, at *6 ("[I]n order to plead facts to sufficiently allege . . . a section 14(a) claim, a plaintiff must identify a precise statement in the proxy that is either affirmatively misleading in and of itself, or is rendered misleading by operation of a materially omitted fact."); *see also Heinze v. Tesco Corp.*, 971 F.3d 475, 480 (5th Cir. 2020) ("Even for omission-based claims, the plaintiff must identify specific 'statements [in the proxy statement]' that are rendered 'false or misleading' by the alleged omissions.").  The court must dismiss a complaint that fails to satisfy those requirements.  15 U.S.C. § 78u-4(b)(3)(A).

Under Section 20(a) of the Exchange Act, "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable . . . ."  15 U.S.C. § 78t(a).  To state a claim under Section 20(a), the plaintiff must plead, among other things, an underlying Exchange Act violation by a controlled person or entity.  *California Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 159 n.21 (3d Cir. 2004) ("The lack of any predicate violation of the Securities Exchange Act of 1934 compels dismissal of control person claims.").

## III.   DISCUSSION

Defendants argue that (1) the SAC fails to plausibly allege a Section 14(a) claim (Count I), (2) the Section 20(a) claim (Count II) fails for lack of a predicate violation of Section 14(a), (3) the state law claims (Counts III and IV) must be litigated in the Delaware Court of Chancery, pursuant to a forum selection clause in Pattern Energy's corporate charter, and (4) the SAC nevertheless fails to state claims under state law.

I recommend that the Court deny the requests to dismiss the Section 14(a) and Section 20(a) claims. I recommend that the Court dismiss the state law claims because those claims must be litigated in state court, in accordance with the forum selection clause.

### A. The Court should deny the Pattern Energy Defendants' request to dismiss the Section 14(a) claim.

Count I of the SAC alleges that Pattern Energy, the Board Defendants, and the Officer Defendants (collectively, the "Pattern Energy Defendants") violated Section 14(a) of the Exchange Act. The Pattern Energy Defendants argue that Count I should be dismissed because Plaintiffs failed to plausibly allege that the proxy materials contained any false or misleading statements. (D.I. 81 at 13–22; D.I. 87 at 2–10.) In response, Plaintiffs point to numerous statements alleged to be false or misleading. (D.I. 83 at 12–34.) I conclude that Plaintiffs have plausibly alleged that the proxy materials contained at least two false statements. Accordingly, I recommend that the Court deny the motion to dismiss Plaintiffs' Section 14(a) claim.

Two of the alleged false statements are statements of opinion. The first is in the Proxy Statement, which provided:

> [F]ollowing extensive negotiations, the Special Committee was able to increase the per share Merger Consideration offered by CPPIB to $26.75 in cash, which, after consultation with its financial advisors, the Special Committee believed was the highest that CPPIB would be willing to pay and *represented the best value reasonably available to our stockholders*[.]

(Proxy Stmt. at 55 (emphasis added).) The second is in the February 26, 2020 Form 8-K, which similarly represented that "[t]he Special Committee sought and believes it obtained the highest price reasonably available for Pattern Energy." (February 26, 2020 Form 8-K, Ex. 99.1.) The SAC alleges that those statements were false because the Special Committee did not actually hold

a sincere belief that CPPIB's offer represented the best reasonably available price for Pattern Energy.[4]  (SAC ¶¶ 4, 5, 81, 120; D.I. 83 at 12–16.)

The SAC plausibly alleges that those two statements of opinion were false: it contains factual content that gives rise to a reasonable inference that the Special Committee did not sincerely believe that CPPIB's offer represented the "best value" and "highest price" reasonably available to shareholders.[5]  Among other things, the SAC alleges facts that suggest that the Special Committee and its advisors acknowledged that Brookfield's bid offered a better value and a higher price compared to the CPPIB deal.  The SAC also alleges facts—not disclosed in the proxy materials—permitting a reasonable inference that, at the time the Board voted to approve the deal with CPPIB, Brookfield remained willing to engage on more favorable terms.

Defendants point out that "a reasonable investor understand[s] that opinions sometimes rest on a weighing of competing facts."  (D.I. 81 at 15 (quoting *Jaroslawicz*, 962 F.3d at 717).) That is, of course, correct.  The Special Committee was entitled to weigh facts and conclude that the CPPIB offer represented the best value and the highest price that was reasonably available to shareholders, especially since Brookfield failed to submit an actionable offer before the Special Committee's deadline.  The Special Committee might also have reasonably concluded (as

---

[4] Defendants contend that each of those alleged misstatements "has already been rejected by the Court."  D.I. 81 at 14.  They have not.  My previous Report and Recommendation observed that Plaintiffs' prior pleading "d[id] not allege that [the Board's] opinion statements were literally false, that is, that the Board . . . had a contrary subjective belief*."  In re Pattern Energy*, 2021 WL 311257, at *11.

[5] A statement of opinion can give rise to liability under Section 14(a) if the speaker did not actually hold the belief professed.  *Kaufman v. Trump's Castle Funding*, 7 F.3d 357, 368 (3d Cir. 1993) ("[O]pinions . . . are not per se inactionable under the securities laws.  Rather, such statements of 'soft information' may be actionable misrepresentations  if the speaker does not genuinely and reasonably believe them."); *see also Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1092–96 (1991) (conclusory opinions can violate Section 14(a) when evidence demonstrates they are false).

Defendants suggest) that Pattern Energy's shareholders would ultimately be better off with CBBIP's all-cash proposal with its shorter time to closing and no risk of litigation over Riverstone's consent right.  (*See* D.I. 87 at 3; Tr. 12–13.)  And Pattern Energy was entitled to publish in the proxy materials the Special Committee's opinions that CPPIB's offer represented the best value and the highest price without disclosing all the competing facts underlying those opinions.  But the Special Committee was not free to say that it believed the CPPIB offer to be the best deal reasonably available to shareholders if the Special Committee did not sincerely believe that to be the case.  The SAC plausibly alleges that is what happened here.

To be clear, one inference that might be drawn from the facts alleged is that the Special Committee did not think that Brookfield's bid was "reasonably available" because Brookfield failed to submit an actionable offer before the Special Committee's deadline.  But an alternative plausible inference is that Brookfield did not submit an offer because the Special Committee imposed an unreasonably short deadline to finalize the necessary agreements with Riverstone— even though the Special Committee knew that Brookfield was willing to accede to all of Riverstone's demands and Brookfield told the Special Committee that it could finalize the agreements in 30 days.  At this stage, I must draw all reasonable inferences in favor of the non-moving party.  Here, that is Plaintiffs.

As required by the PSLRA, the SAC identifies statements alleged to be false, it explains why those statements are believed to be false, and it alleges facts on which that belief is formed.  The alleged facts state a plausible Section 14(a) claim.  Accordingly, I recommend that the Court deny the Pattern Energy Defendants' motion to dismiss Count I.[6]

---

[6] Counsel for the Pattern Energy Defendants agreed at the hearing that, if the Court concluded that Plaintiffs had identified at least one actionable misstatement, the Section 14(a)

**B.    The Court should deny the Individual Defendants' request to dismiss the Section 20(a) claim.**

Count II of the SAC alleges that the Board Defendants and the Officer Defendants (collectively, the "Individual Defendants") violated Section 20(a) of the Exchange Act. The Individual Defendants argue that the Section 20(a) claim should be dismissed because the SAC fails to allege a predicate Exchange Act violation.

I conclude that the SAC does allege a Section 14(a) claim. Accordingly, I recommend denying the Individual Defendants' motion to dismiss the Section 20(a) claim.[7]

---

claim could move forward. (Tr. at 33–34 (counsel acknowledging that, given the factual overlap with the Court of Chancery case, additional guidance from the Court would likely not impact the scope of discovery).)

[7] At the hearing, counsel for the Pattern Energy Defendants suggested (in response to a question from the Court) that the Section 20(a) claims should also be dismissed as to each Individual Defendant because the SAC fails to plead each Individual Defendant's culpability as a controlling person. (Tr. 34–36.) I agree with Plaintiffs that the argument was not fairly raised in the briefing. (Tr. 88–89.) This is the entirety of the Section 20(a) argument in the Pattern Energy Defendants' Opening Brief:

> To survive a motion to dismiss, "plaintiffs must state with particularity the circumstances of both the defendants' control of the primary violator, as well as of the defendants' culpability as controlling persons." *In re Digital Island* [*Sec. Litig.*, 223 F. Supp. 2d 546, 561 (D. Del. 2002)]. Plaintiffs plead neither. A predicate element of a section 20(a) claim is "proof of a separate underlying violation of the Exchange Act." *Id.* Plaintiffs plead no such violation here for the reasons discussed above [(*i.e.*, failure to state a Section 14(a) claim)], and the 20(a) claim should be dismissed out of hand. *See id.* at 561–62; *accord Laborers' Loc. #231 Pension Fund v. Cowan*, 300 F. Supp. 3d 597, 610 (D. Del. 2018); *In re Aetna, Inc. Sec. Litig.*, 617 F.3d 272, 285 (3d Cir. 2010) (same).

(D.I. 81 at 22.) The Opening Brief did not distinguish between the Individual Defendants even though one of them—Defendant Garland—was the CEO of Pattern Energy and signed the challenged proxy statement.

Plaintiffs' Answering Brief pointed out that the Opening Brief "address[ed] *none*" of the SAC's allegations about "the involvement of each Board and Officer Defendant" and that Defendants "simply contend[ed] that the Section 20(a) claim should be dismissed because the SAC purportedly does not state a predicate Section 14(a) claim." (D.I. 83 at 34 (emphasis in original).) The Pattern Energy Defendants' Reply Brief responded follows: "Plaintiffs' Opposition confirms

**C.     Plaintiffs' state law claims should be dismissed in accordance with the forum selection clause.**

Count III alleges that the Individual Defendants breached their fiduciary duties under state law, and Count IV alleges that Riverstone aided and abetted the breaches.   The Court has supplemental jurisdiction over Counts III and IV under 28 U.S.C. § 1367.   The Individual Defendants and Riverstone argue that (1) the state law claims should be dismissed because they are subject to a forum selection clause in Pattern Energy's Certificate of Incorporation that requires them to be filed in the Delaware Court of Chancery and (2) the Court should nevertheless decline to exercise jurisdiction under § 1367(c).

I agree that Plaintiffs' state law claims should be dismissed in accordance with the forum selection clause.   "[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*."   *Atl. Marine Const. Co. v. U.S. D. Ct.*, 571 U.S. 49, 60 (2013).   When a court receives a request to dismiss based on a forum selection clause, it must confront two threshold questions: (1) do the claims at issue fall within the scope of the clause; and (2) is the clause enforceable.   *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 180 (3d Cir. 2017).   If an enforceable forum selection clause covers the claims at issue, it should be given effect "[i]n all but the most unusual cases."   *Atl. Marine,* 571 U.S. at 66; *Collins*, 874 F.3d at 186–187.

---

(Opp. at 34) that the sole predicate for their Section 20(a) claim is their Section 14(a) claim, the failures of which are addressed above and in the Opening Brief.  Plaintiffs' Section 20(a) should be dismissed based on those same failures."  (D.I. 87 at 10.)  The Reply Brief did not argue that the SAC failed to adequately plead the Individual Defendants' culpability as controlling persons. Nor did the Reply Brief deny the Answering Brief's assertion that Defendants' only argument for dismissing the Section 20(a) claim was the failure to plead a predicate Section 14(a) violation.

Under these circumstances, the Court declines to entertain the argument that the Section 20(a) claims should be dismissed on the basis that the SAC fails to plead the Individual Defendants' culpability as controlling persons.

Plaintiffs do not argue that the clause does not encompass the state law claims set forth in Counts III and IV.[8]  They do argue that the clause is unenforceable.  The Third Circuit says that whether a forum selection clause is enforceable is determined by federal law.  *Collins*, 874 F.3d at 181.  The Third Circuit has also stated that such a clause is unenforceable only if "the party objecting to its enforcement establishes (1) that it is the result of fraud or over-reaching, (2) that enforcement would violate a strong public policy of the forum [in which the suit was brought], or (3) that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable."  *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983) (citing *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10–11 (1972)), *overruled on other grounds by Lauro Lines s.r.l. v. Chasser*, 490 U.S. 495 (1989); *see also Collins*, 874 F.3d at 181.

---

[8] Pattern Energy's Second Amended and Restated Certificate of Incorporation provides, in pertinent part:

> Unless the Corporation consents in writing to the selection of an alternative forum, the Court of Chancery of the State of Delaware shall, to the fullest extent permitted by law, be the sole and exclusive forum for (A) any "internal corporate claim" within the meaning of the DGCL and (B) . . . (ii) any action asserting a claim of breach of a fiduciary duty owed by, or other wrongdoing by, any director, officer, employee or agent of the Corporation to the Corporation or the Corporation's stockholders . . . ; provided, that, if and only if the Court of Chancery of the State of Delaware dismisses any such action for lack of subject matter jurisdiction, such action may be brought in another state court sitting in the State of Delaware. To the fullest extent permitted by law, any person or entity purchasing or otherwise acquiring any interest in shares of capital stock of the Corporation shall be deemed to have notice of and consented to the provisions of this Article . . . .

(D.I. 82, Ex. A at 3.)  Plaintiffs do not dispute that Delaware law permits Delaware corporations to include such clauses in their internal governing documents. *See* 8 Del. C. §§ 102(b)(1), 115; *Salzberg v. Sciabacucchi*, 227 A.3d 102, 116–120 (Del. 2020); *Boilermakers Loc. 154 Ret. Fund v. Chevron Corp.*, 73 A.3d 934, 950–54 (Del. Ch. 2013).

Plaintiffs do not dispute that their aiding and abetting claim against Riverstone is covered by the clause.

Plaintiffs do not contend that the forum selection clause here resulted from "fraud or overreaching" or that litigating its state law claims in the Court of Chancery (a few blocks away) "is so seriously inconvenient as to be unreasonable." *Coastal Steel*, 709 F.2d at 202. Plaintiffs suggest in a footnote that there is a public policy "that an exclusive forum provision should not be enforced when the forum lacks subject-matter jurisdiction over all claims" that plaintiff wishes to bring (D.I. 83 at 35 n.16), but none of the authority cited by Plaintiffs reveals any such policy.[9]

Plaintiffs essentially contend that the forum selection clause should be held unenforceable in this case because they want to assert federal Exchange Act claims, and they can't bring those claims in state court. I reject that argument. For one thing, the clause here does not appear to require shareholders to bring direct Exchange Act claims in state court (which lacks jurisdiction over such claims, 15 U.S.C. § 78aa), and the parties do not argue otherwise.[10] Plaintiffs' inability to bring federal securities claims in state court has nothing to do with the enforceability of the clause as to their state law claims.

Plaintiffs say it would be "unreasonable" to require them to litigate their federal and state claims in two separate courts. But none of the cases cited by Plaintiff support that proposition. And I don't think it is unreasonable to require Plaintiffs to litigate their state law claims in state court and their federal claims in this Court. *See Luce v. Edelstein*, 802 F.2d 49, 57 (2d Cir. 1986) (affirming district court's dismissal of most claims due to a forum selection clause providing for

---

[9] On the contrary, the *Boilermakers* case cited by Plaintiffs acknowledged a scenario in which a forum selection clause might operate to require a plaintiff to litigate its state law internal affairs claims in state court but litigate its federal securities claims in federal court. 73 A.3d at 962–63.

[10] In *Boilermakers*, the Delaware Court of Chancery examined a nearly identical clause and suggested (in dicta) that "a claim by a stockholder under federal law for falsely soliciting proxies" would not fall under the clause. 73 A.3d at 942, 962.

state court jurisdiction but agreeing that the district court correctly retained the Exchange Act claims); *see also KDH Consulting Grp. LLC v. Iterative Capital Mgmt.*, No. 20-3274, 2020 WL 7251172, at *8–9 (S.D.N.Y. June 29, 2020).  What would be unreasonable would be to allow a plaintiff to entirely disregard a valid forum selection clause simply by asserting additional claims not subject to the clause.  *See Del Aguila v. Genentech-Roche Transitional Benefit Plan*, No. 14-4265, 2015 WL 2089636, at *2 (N.D. Cal. May 4, 2015) ("[I]f courts were unable to order such partial dismissals [of claims subject to a forum selection clause], a plaintiff could effectively nullify a contractual provision for an agreed upon forum simply by adding a claim not covered thereunder.").

Because the forum selection clause requires Plaintiffs' state law claims to be litigated in the Court of Chancery (which indisputably has jurisdiction over them), the clause should control unless Plaintiffs can establish that this is one of those "unusual" and "extraordinary" cases where factors relevant to the public interest weigh against it.[11]  *Collins*, 874 F.3d at 186.  Plaintiffs argue that the "public interest in judicial economy" tilts the scale in support of this Court entertaining all its claims.  I disagree.  The Court need not consider whether there could ever be a case in which a federal court would entertain state law claims subject to a state court forum selection clause in the name of "judicial economy" because this is certainly not such a case.  Here, judicial economy

---

[11] "Public-interest factors may include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'"  *Atl. Marine*, 571 U.S. at 62 n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)); *see also In re Howmedica Osteonics Corp*, 867 F.3d 390, 402 n.7 (3d Cir. 2017) ("[W]e clarify that 'practical problems that make trial of a case easy, expeditious, and inexpensive' represent a private interest, as the Supreme Court stated in *Atlantic Marine*, and as we have often stated in the *forum non conveniens* context, [] we acknowledge judicial economy considerations to be a distinct, cognizable public interest." (citations omitted)).

supports requiring Plaintiffs to litigate their state law claims in the Court of Chancery because a consolidated shareholder action alleging nearly identical breach of fiduciary duty and aiding and abetting claims is already pending there.[12]  *See In re Pattern Energy Grp. Inc. Stockholders Litig.*, No. 2020-357-MTZ (Del. Ch.).  Judicial economy is not promoted by this court hearing duplicative claims.

Finally, Plaintiffs suggest that litigating their federal and state claims in two different courts would be "inconvenien[t]" for them.  (D.I. 83 at 35 n.16.)  Maybe so, but courts are not permitted to consider the private interests of a party opposing enforcement of a forum selection clause. *Collins*, 874 F.3d at 186; *see also Phillips v. Audio Active Ltd.*, 494 F.3d 378, 393 (2d Cir. 2007) (concluding that it was appropriate to dismiss claim subject to forum selection clause and retain claims not subject to clause, notwithstanding inconvenience to the parties to litigate in two fora).

I agree with Defendants that the forum selection clause should be enforced as to Counts III and IV.[13]  Those counts should be dismissed.

---

[12] Indeed, it appears that most of the new factual allegations in the SAC were obtained from the state court complaint and the Court of Chancery's voluminous opinion granting-in-part and denying-in-part a motion to dismiss filed by Defendants in that action.  *In re Pattern Energy Grp. Inc. S'holders Litig.*, No. 2020-0357-MTZ, 2021 WL 1812674, at *2 (Del. Ch. May 6, 2021). (*See* D.I. 81 at 12–13; D.I. 83 at 1.)

[13] Because Counts III and IV are appropriately dismissed based on the forum selection clause, the Court need not separately address Defendants' alternative argument that the Court should decline to exercise jurisdiction over those claims pursuant to 28 U.S.C. § 1367(c).  That said, the fact that nearly identical shareholder claims against the same defendants are already being litigated in the Court of Chancery weighs in favor of declining discretionary jurisdiction. Moreover, some courts have reasoned that the fact that a claim is subject to dismissal for *forum non conveniens* would be an "exceptional circumstance" that would support declining jurisdiction pursuant to § 1367(c)(4).  *Carpenter Co. v. BASF SE*, 683 F. Supp. 2d 1214, 1224 (D. Kan. 2010); *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-1775, 2008 WL 5958061, at *37 (E.D.N.Y. Sept. 26, 2008), *report and recommendation adopted in part*, 2009 WL 3443405 (E.D.N.Y. Aug. 21, 2009), *aff'd*, 697 F.3d 154 (2d Cir. 2012).

## IV.   CONCLUSION

For the foregoing reasons, I recommend as follows: the Pattern Energy Defendants' Motion to Dismiss (D.I. 78) should be GRANTED-IN-PART and DENIED-IN-PART; and Riverstone's Motion to Dismiss (D.I. 79) should be GRANTED.  The Pattern Energy Defendants' requests to dismiss Counts I and II should be denied, and those claims should proceed in this Court. Defendants' requests to dismiss Counts III and IV should be granted, and those claims should be dismissed without prejudice.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), (C), Federal Rule of Civil Procedure 72(b)(1), and District of Delaware Local Rule 72.1.  Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages.  Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court.

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated October 9, 2013, a copy of which can be found on the Court's website.


Dated: January 27, 2022

_____
The Honorable Jennifer L. Hall
UNITED STATES MAGISTRATE JUDGE