IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE PATTERN ENERGY GROUP INC. SECURITIES LITIGATION | ) ) ) ) |

C.A. No. 20-275 (MN) (JLH)

## **MEMORANDUM OPINION**

Sue L. Robinson, Brian E. Farnan, Michael J. Farnan, FARNAN LLP, Wilmington, DE; Andrew J. Entwistle, ENTWISTLE & CAPPUCCI LLP, Austin, TX; Vincent R. Cappucci, Arthur V. Nealon, Brendan J. Brodeur, Jonathan H. Beemer, Jessica A. Margulis, ENTWISTLE & CAPPUCCI LLP, New York, NY – Lead and Liaison Counsel for Lead Plaintiffs and the Class

Marc M. Seltzer, Krysta Kauble Pachman, SUSMAN GODFREY L.L.P., Los Angeles, CA 90067 – Of Counsel for the Class

A. Thompson Bayliss, April M. Kirby, ABRAMS & BAYLISS LLP, Wilmington, DE; Alan S. Goudiss, K. Mallory Brennan, SHEARMAN & STERLING LLP, New York, NY; Christina E. Myrold, SHEARMAN & STERLING LLP, San Francisco, CA – Attorneys for Defendants Pattern Energy Group Inc., Alan R. Batkin, Edmund John Philip Browne, Richard A. Goodman, Douglas G. Hall, Patricia M. Newson, Mona K. Sutphen, Michael Garland, Hunter Armistead, Daniel Elkort, Michael Lyon, Esben Pedersen, and Christopher Shugart

March 30, 2022
Wilmington, Delaware

*Maryellen Noreika*

**NOREIKA, U.S. DISTRICT JUDGE**

Presently before the Court are the objections of The Pattern Energy Defendants[1] (D.I. 91) to Magistrate Judge Hall's Report and Recommendation (D.I. 90, "the Report"). The Report recommends granting-in-part and denying-in-part the Pattern Energy Defendants' motion to dismiss (D.I. 78) the Second Amended Complaint ("SAC") (D.I. 76) and granting the Riverstone Defendants'[2] motion to dismiss (D.I. 79) the SAC.[3] The Pattern Energy Defendants only object to those portions of the Report denying their motion to dismiss as to Counts I and II of the SAC.[4] The Court has reviewed the Report (D.I. 90), Defendants' objections (D.I. 91) and the response thereto (D.I. 94)[5], and the Court has considered *de novo* the objected-to portions of the Report and the relevant portions of the motion to dismiss and Plaintiffs' response thereto (*see* D.I 78, 81, 82,

---

[1]   The Pattern Energy Defendants are:  Pattern Energy Group Inc., Alan R. Batkin, Edmund John Philip Browne, Richard A. Goodman, Douglas G. Hall, Patricia M. Newson, Mona K. Sutphen, Michael Garland, Hunter Armistead, Daniel Elkort, Michael Lyon, Esben Pedersen, and Christopher Shugart.

[2]   The Riverstone Defendants are: Riverstone Holdings LLC and Riverstone Pattern Energy II Holdings, L.P.

[3]   Count IV of the SAC is the only count alleged against the Riverstone Defendants.  (D.I. 76). No objections were filed regarding the portion of the Report recommending the Court grant the Riverstone Defendants' motion to dismiss.  Therefore, the Report is adopted as to the recommendation that the Court grants the Riverstone Defendants' motion to dismiss and Count IV of the SAC is dismissed.

[4]   No objections were filed to the Report's recommendation that the Pattern Energy Defendants' motion be granted as to Count III.  Therefore, the Report is adopted as to the recommendation that the Pattern Energy Defendants' motion be granted as to Count III and Count III of the SAC is dismissed.

[5]   On February 23, 2022, the Pattern Energy Defendants filed a Motion for Leave to File a Limited Reply in Further Support of Their Objection to the Magistrate Judge's Report and Recommendation (D.I. 95) and attached a copy of their limited reply (D.I. 95-2).  Lead Plaintiffs opposed the motion.  (D.I. 96).  Having considered the motion and the response, the motion will be granted.  The Court has considered the arguments set forth in the limited reply in addressing the Pattern Energy Defendants' objections.

83, 84, 87). For the reasons set forth below, the Pattern Energy Defendants' objections are OVERRULED, the Report is ADOPTED, and the Pattern Defendants' motion to dismiss Counts I and II of the SAC is DENIED.

## I.     BACKGROUND

The Report set forth the relevant facts clearly. As no party has objected to the Report's recitation of facts, the Court adopts that recitation here:

### A.     The Parties

This dispute arises from an agreement between Defendant Pattern Energy Group Inc. ("Pattern Energy") and the Canada Pension Plan Investment Board ("CPPIB") to merge Pattern Energy with a subsidiary of CPPIB. That agreement was announced on November 4, 2019. Plaintiffs are investment funds that owned Pattern Energy stock at the time of the merger. (SAC ¶ 40.) Plaintiffs were all advised by their investment advisor, Water Island Capital, LLC ("Water Island Capital"). (*Id.*)

At all times relevant here, Defendant Pattern Energy was a Delaware Corporation with "principal executive offices" in San Francisco, California. (*Id.* ¶ 41, App'x A.) Its business was operating wind and solar power facilities in the United States, Canada, and Japan. (*Id.*) Pattern Energy acquired the facilities that it operated primarily by purchasing them from nonparty Pattern Energy Group 2 LP ("Pattern Development") and its predecessor company. (*Id.* ¶ 41.) Pattern Development was a Delaware limited partnership with "principal executive offices" in San Francisco. (*Id.* ¶ 74, App'x A.) Its business was developing renewable energy and transmission assets. (*Id.*)

Defendant Riverstone Holdings LLC ("Riverstone Holdings") is a Delaware limited liability company and is an energy- and power-focused private investment firm. (*Id.* ¶ 45, App'x A.) Defendant Riverstone Pattern Energy II Holdings, LP ("Riverstone PE") is a Delaware limited partnership that owned an equity stake in Pattern Development until the merger. (*Id.* ¶ 46, App'x A.)

According to the SAC, Riverstone Holdings and its affiliates (collectively, "Riverstone") held a controlling 70% equity interest in Pattern Development before the merger. (*Id.* ¶¶ 46, 51, App'x A.) The remaining equity interest of Pattern Development was owned as follows: Pattern Energy held a 29% equity stake, and most of the remaining 1% was held by Pattern Development's management,

many of whom also had high-level management roles at Pattern Energy. (*Id.* ¶¶ 24, 43, 52, App'x A.) At the time of the merger, Pattern Development had a consent right that limited Pattern Energy's ability to transfer its interest in Pattern Development to any third party without the consent of Pattern Development. (*Id.* ¶¶ 47, 51, 52, App'x A; D.I. 82, Ex. B ("Proxy Stmt.") at 36.) Because Riverstone held a controlling equity stake in Pattern Development, Riverstone controlled the consent right. (SAC ¶ 47, App'x A.)

The individuals named as defendants in the SAC include the members of Pattern Energy's Board at the time of the merger ("Board Defendants") and six members of Pattern Energy's management team ("Officer Defendants"). The Board Defendants are Alan R. Batkin, Edmund John Philip Browne, Richard A. Goodman, Douglas G. Hall, Patricia M. Newson, Mona K. Sutphen, and Michael Garland. (SAC ¶¶ 64–70.) The Officer Defendants are Michael Garland, Hunter Armistead, Daniel Elkort, Michael Lyon, Esben Pedersen, and Christopher Shugart. (*Id.* ¶¶ 53–59.) Defendant Garland was the CEO of both Pattern Energy and Pattern Development as well as a member of the boards of directors at both companies. (*Id.* ¶¶ 54, 60.)

## B.    The Proxy Statement

Plaintiffs' federal claims are all based on their contention that the proxy materials sent to Pattern Energy shareholders in connection with its merger with CPPIB contained material misrepresentations and omissions. The February 4, 2020 proxy statement (the "Proxy Statement") is 138 pages, single-spaced, plus attachments.[6] It contains an 18-page summary of the merger negotiations. (Proxy Stmt. at 36–54.) Below I summarize the portions of the Proxy Statement and the corresponding allegations in the SAC that are most relevant to the Court's resolution of the pending motions.

On June 5, 2018, Pattern Energy's Board decided to begin exploring "strategic opportunities," including opportunities to merge. (*Id.* at 36–37.) The Board appointed a Special Committee composed of independent directors to conduct its strategic review, and Defendant Batkin was appointed as Chairperson. (*Id.*) The Special Committee retained outside legal counsel, and it retained Evercore Group LLC ("Evercore") and Goldman Sachs & Co. as its financial advisors. (*Id.* at 37, 40.)

Over the next year, the Special Committee engaged with several bidders. At an October 29, 2018 meeting of the Special Committee,

---

[6]    Although Plaintiffs did not attach to their pleading copies of the SEC filings on which their Exchange Act claims are based, no one disputes that the Court may properly consider those filings when ruling on the pending motions.

Defendant Garland—who was not a member of the Special Committee—summarized an approach "he had received from representatives of a large alternative asset manager (referred to [in the Proxy Statement] as 'Party A') which owns a substantial interest in a company in the alternative energy industry (referred to [in the Proxy Statement] as 'Company A')." (Proxy Stmt. at 37; SAC ¶ 82.) According to the SAC, Party A was Brookfield Renewable Partners L.P. ("Brookfield") and Company A was TerraForm Power, Inc. ("TerraForm"), in which Brookfield owned an equity stake. (SAC ¶ 82.) The Special Committee asked Garland to reach out to representatives of Brookfield to see if they would provide a preliminary written proposal for a strategic transaction. (Proxy Stmt. at 37–38.)

Pattern Energy's discussions with Brookfield continued for the better part of a year. (*Id.* at 38–53; SAC ¶¶ 82–107.) On February 21, 2019, Brookfield sent "a preliminary non-binding term sheet outlining high-level proposed terms for a potential transaction" involving the acquisition of Pattern Energy by TerraForm in exchange for TerraForm stock at an at-market exchange ratio. (Proxy Stmt. at 39; SAC ¶ 83.) According to the SAC, Brookfield's proposal was not conditioned on an acquisition of Pattern Development. (SAC ¶ 83.) The Special Committee discussed the proposal at meetings in February and March 2019. (Proxy Stmt. at 39; SAC ¶¶ 84–85.) The SAC alleges that, at those meetings, the Special Committee noted the potential benefits of a transaction with Brookfield, including increased access to capital. (SAC ¶¶ 84–85.) However, Defendants Garland and Elkort warned the Special Committee that despite the potential for "significant synergies" in a Brookfield transaction, the need for Riverstone's support was important because Pattern Development's consent right would "likely be implicated." (*Id.* ¶ 85.)

According to the SAC, "Pattern Energy responded to the Brookfield bid with a [March 11, 2019] term sheet restructured by Special Committee advisors Paul Weiss[, Rifkind, Wharton & Garrison LLP] and Evercore." (SAC ¶ 86.) The "new term sheet was structured as a merger of TerraForm into a subsidiary of Pattern Energy." (*Id.*) That structure would have allegedly left Pattern Energy as the surviving entity, thereby eliminating the need for Pattern Development's consent to the transaction. (*Id.*)

Beginning in April 2019, some of the discussions between Pattern Energy and Brookfield included Riverstone. (Proxy Stmt. at 40.) At a meeting between Defendant Batkin, Pattern Energy management, Brookfield representatives, and Riverstone representatives on April 16, 2019, Riverstone indicated that it would be open to considering proposals from Brookfield that included the

acquisition of Pattern Development as well as Pattern Energy. (*Id.*) On May 31, 2019, Pattern Energy received a revised term sheet from Brookfield for an all-stock acquisition of Pattern Energy by TerraForm that reflected a 15% merger premium. (Proxy Stmt. at 41; SAC ¶ 87.) The term sheet proposed that the combined company would concurrently purchase Pattern Development at a price to be negotiated by Pattern Energy and Riverstone, such that Riverstone would be cashed out and no longer have any ownership. (Proxy Stmt. at 41; SAC ¶ 87.)

While the discussions with Brookfield (and others) continued, Pattern Energy was also in talks with CPPIB. On June 28, 2019, CPPIB sent the Special Committee a non-binding proposal to purchase the outstanding shares of Pattern Energy common stock for $25.50 per share in cash, "conditioned on an agreement being reached between CPPIB and Riverstone for the acquisition of Pattern Development." (SAC ¶ 88; Proxy Stmt. at 42.) According to the SAC, the offer "reflected a 11% merger premium based on Pattern Energy's stock price on that date." (SAC ¶ 88.)

On July 23, 2019, Brookfield submitted a revised proposal for an all-stock merger between TerraForm and Pattern Energy. (Proxy Stmt. 43–44; SAC ¶ 90.) Brookfield again proposed to acquire Pattern Energy in an all-stock transaction at an exchange ratio to reflect an implied 15% premium to the price of Pattern Energy stock, with the combined entity purchasing Pattern Development. Brookfield also indicated that it would be willing to acquire Pattern Energy at a 20% premium without also acquiring Pattern Development. (Proxy Stmt. 43–44; SAC ¶ 90.) According to the SAC, both of those bids "were superior to CPPIB's $25.50 bid." (SAC ¶ 90.) At a meeting on July 31, 2019, the Special Committee recognized that Brookfield's offers exceeded CPPIB's current offer. (SAC ¶ 92.)

On August 16, 2019, CPPIB provided the Special Committee with a revised proposal to acquire Pattern Energy common stock for between $26.25 and $26.50 in cash per share and to purchase the equity interests in Pattern Development not owned by Pattern Energy from Riverstone. (Proxy Stmt. at 45; SAC ¶ 94.) The SAC alleges that CPPIB's August 16 offer was "still well below Brookfield's then current bid." (SAC ¶ 94.)

On August 26, 2019, Brookfield made a revised proposal. (Proxy Stmt. at 46.) The SAC alleges that Brookfield's proposal letter revealed information not disclosed in the Proxy Statement, including that the Special Committee's advisors had told Brookfield (1) that the Board no longer supported a transaction that internalized Pattern Development and (2) that Riverstone would use its consent

right to block any deal in which TerraForm became the parent company of Pattern Energy. (SAC ¶ 99.) Accordingly, Brookfield proposed to acquire Pattern Energy through an all-stock merger between Pattern Energy and TerraForm, with Pattern Development remaining a separate entity. (Proxy Stmt. at 46; SAC ¶ 99.) Brookfield's proposal contemplated that Pattern Energy would acquire TerraForm, leaving Pattern Energy as the surviving entity. That deal structure, according to the SAC, would have eliminated the need for Riverstone's consent to the transaction. (SAC ¶ 99.)

The SAC alleges that, on August 28, 2019, "Evercore informed the Special Committee that Brookfield's proposal implied a merger price of $34 per share of Pattern Energy common stock as of that date, and represented a 45% merger premium for Pattern Energy Shareholders," making it "superior[]" to CPPIB's then-current bid. (SAC ¶¶ 100, 113, 128.) The Proxy Statement reported of the same meeting that Evercore had presented an analysis of the August 26 Brookfield offer yielding premium ranges of "between 1.4% and 28.8% . . . based on an expected range of trading prices for shares of the combined company's common stock post-transaction and on certain other assumptions." (*Id.* ¶¶ 111, 113; Proxy Stmt. at 46.)

Defendant Garland, Brookfield representatives, and Riverstone representatives met on September 4, 2019 to discuss Brookfield's August 26 proposal. (Proxy Stmt. at 48.) At the meeting, Brookfield and Riverstone "indicated that they would not be supportive of a combination of Pattern [Energy] and [TerraForm] absent certain changes to the agreements governing the commercial relationship between Pattern [Energy] and Pattern Development." (*Id.*) The SAC alleges that, after the meeting, Defendant Batkin asked Riverstone "to provide Brookfield with a list of proposed new governance terms between Pattern Energy and Pattern Development." (SAC ¶ 146.)

The SAC alleges that, at a Special Committee meeting on September 29, 2019, Defendant Batkin reported that Riverstone had provided Brookfield with a "fairly expansive" list of terms, and that Brookfield had indicated that it would be "willing and able to sign onto the terms of [Brookfield's] letter as-is." (*Id.*) The Proxy Statement did not disclose that development. (Proxy Stmt. at 50.) The Proxy Statement did disclose that Batkin thereafter informed Brookfield that, although it had proposed a competitive offer to acquire Pattern Energy, Brookfield would need to "confirm, either that (1) [Brookfield's] proposal was not conditioned on [it] entering into agreements with Pattern Development and Riverstone or (2) [Brookfield] had negotiated definitive drafts of such agreements with Pattern Development and Riverstone." (Proxy Stmt. at 51.)

On October 17, 2019, Evercore, at the request of the Special Committee, asked Brookfield and CPPIB to submit proposed definitive documentation by October 23, 2019 and "best and final" offers by October 28, 2019. (*Id.* at 51; SAC ¶¶ 105.)  On October 28, 2019, CPPIB submitted a final all-cash offer of $26.75 per share for the outstanding shares of Pattern Energy. (Proxy Stmt. at 52; SAC ¶ 105.)  CPPIB's offer—which was ultimately accepted—contemplated a concurrent acquisition of Pattern Development. (Proxy Stmt. at 53–54.)

Also on October 28, 2019, Brookfield reaffirmed its offer to acquire Pattern Energy in an all-stock transaction involving the combination of Pattern Energy and TerraForm, with Pattern Development remaining a separate entity.  (Proxy Stmt. at 52; SAC ¶ 105.)  Brookfield did not submit transaction documentation, and the Special Committee agreed to extend the deadline to October 30, 2019.  (Proxy Stmt. at 52.)  The Special Committee also asked Brookfield to confirm that it would be willing to proceed with a merger regardless of any agreement (or the lack thereof) between Brookfield and Riverstone.  (*Id.*)  The Proxy Statement did not report, however, that Brookfield told Pattern Energy on October 28, 2019 that it "could agree" to all of Riverstone's proposed terms for the agreements.  (SAC ¶¶ 148–149.)

On October 30, 2019, Brookfield submitted a draft merger agreement that conditioned closing on it entering into agreements with Riverstone.  (Proxy Stmt. at 52.)  Later that day, counsel for the Special Committee communicated to Brookfield that it would need to finalize any arrangements with Riverstone that Brookfield believed necessary and to submit executable transaction documentation prior to close of business on November 2, 2019.  (*Id.*)  Brookfield indicated that it believed it could negotiate such agreements within 30 days, but the Special Committee reiterated its request for executable transaction documentation by November 2. (*Id.*)  According to the SAC, the Proxy Statement's failure to report Brookfield's willingness to agree to Riverstone's proposed terms "left shareholders with the misleading impression that the failures [to finalize contractual arrangements with Riverstone] were Brookfield's . . . ."  (SAC ¶ 149.)

The Special Committee met on October 31, 2019 to discuss the bids from CPPIB and Brookfield.  (Proxy Stmt. at 52; SAC ¶ 106.)  The SAC alleges that, at the meeting, Evercore told the Special Committee that "Brookfield's offer provided Pattern Energy shareholders far greater per share consideration than CPPIB. Specifically, Evercore concluded that Brookfield's offer had an implied value of up to $32.94 per share of Pattern Energy common stock (compared to CPPIB's offer of $26.75 per share) if the

combined company maintained TerraForm's dividend policy and traded at TerraForm's 5.72% dividend yield in 2020." (SAC ¶ 106.)

On November 2, 2019, Brookfield told the Special Committee that it would not be submitting a final proposal. (Proxy Stmt. at 53; SAC ¶¶ 149–150.) On November 3, 2019, Evercore opined to the Special Committee that CPPIB's offer of $26.75 per share was fair from a financial point of view. (Proxy Stmt. at 53.) The Special Committee recommended that the Board approve the merger, which it did. (Proxy Stmt. at 53; SAC ¶ 107.)

The Board filed with the Securities and Exchange Commission (SEC) a Schedule 14A Definitive Proxy Statement on February 4, 2020, recommending that the shareholders vote in favor of the proposed merger with CPPIB. It explained that, pursuant to the merger transaction, Pattern Energy would be merged with a newly formed affiliate of CPPIB. (Proxy Stmt. at 53–54, 74.) In exchange, shares of Pattern Energy Company Common Stock would be converted to the right to receive $26.75 in cash. (Proxy Stmt. at 53.) The Proxy Statement further disclosed that, pursuant to a concurrent transaction—dubbed the "Contribution Agreement"—the Management Defendants and Riverstone would be contributing their respective stakes in Pattern Development to an affiliate of CPPIB in exchange for equity interests in the affiliate. (Proxy Stmt. at 74.) The combined result of the Pattern Energy merger and the acquisition of Pattern Development pursuant to the Contribution Agreement was that Pattern Energy and Pattern Development would be under the common ownership of CPPIB. (Proxy Stmt. at 74; SAC App'x A.)

The Proxy Statement represented that "after consultation with its financial advisors, the Special Committee believed" that the proposed merger consideration "represented the best value reasonably available to [the] stockholders." (Proxy Stmt. at 55; SAC ¶ 81.) Similarly, in a February 26, 2020 Form 8-K, Pattern Energy stated that [t]he Special Committee sought and believes it obtained the highest price reasonably available for Pattern Energy." (*See* Pattern Energy Grp., Inc., Current Report, Ex. 99.1 (Form 8-K) (Feb. 26, 2020)[7]; SAC ¶ 81.)

The Proxy Statement garnered negative attention, including from Plaintiffs' financial advisor, Water Island Capital. Two proxy advisory services, Institutional Shareholder Services and Glass, Lewis & Co., LLC, both recommended that Pattern Energy

---

[7]   The February 26, 2020 Form 8-K is available online via the SEC's EDGAR database at https://www.sec.gov/Archives/edgar/data/1561660/000095014220000593/eh2000383_ex 9901.htm (last visited Jan. 26, 2022).

shareholders vote against the proposed merger. (SAC ¶¶ 20, 127, 128.) The shareholders nevertheless voted to approve the merger at a special meeting on March 10, 2020. (SAC ¶ 170.)

**C.    Procedural History**

Plaintiffs filed this action on February 25, 2020, two weeks before the merger was approved via shareholder vote. (D.I. 1.) On May 22, 2020, Plaintiffs filed a Consolidated Amended Class Action Complaint, alleging violations of federal securities laws and state law. (D.I. 26.) Defendants moved to dismiss the Consolidated Amended Class Action Complaint. (D.I. 48; D.I. 50.) I recommended that the Court grant the motions to dismiss. *See In re Pattern Energy*, 2021 WL 311257 (D.I. 68). On February 26, 2021, the Court adopted my report and recommendation and dismissed the Consolidated Amended Class Action Complaint over Plaintiffs' objections. *See In re Pattern Energy*, 2021 WL 765760 (D.I. 74).

On March 29, 2021, Plaintiffs filed a Second Consolidated Amended Class Action Complaint. (D.I. 76.) The SAC adds new factual allegations supporting Plaintiffs' claims. Count I alleges violations of Section 14(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78n(a), against Pattern Energy, the Board Defendants, and the Officer Defendants. Count II alleges violations of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), against the Board Defendants and the Officer Defendants. Count III is a state law breach of fiduciary duty claim against the Board Defendants and the Officer Defendants. Count IV alleges that Riverstone is liable for aiding and abetting the breaches of fiduciary duties.

Defendants again filed motions to dismiss. (D.I. 78 (Pattern Energy, Board Defendants, and Officer Defendants); D.I. 79 (Riverstone).) Both motions are fully briefed. (D.I. 80; D.I. 81; D.I. 82; D.I. 83; D.I. 84; D.I. 86; D.I. 87.) [Judge Hall] heard oral argument on September 2, 2021 ("Tr. __").

On January 27, 2022, Judge Hall issued the Report recommending, *inter alia*, that Pattern Energy's requests to dismiss Counts I and II be denied. (D.I. 90). Pattern Energy timely objected. (D.I. 91).

## II.    <u>LEGAL STANDARD</u>

When a complaint is challenged by a Rule 12(b)(6) motion to dismiss, the Court conducts a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the

Court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Id.* at 210-11.  Second, the Court determines "whether the facts alleged in the complaint are sufficient to show . . . a 'plausible claim for relief.'"  *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  To withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556, U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (internal citations omitted).

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputed authentic documents if the complainant's claims are based upon these documents."  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).  The Court is not obligated to accept as true "bald assertions" or "unsupported conclusions and unwarranted inferences."  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  Instead, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim.  *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal citations omitted).

## III.   DISCUSSION

The Pattern Energy Defendants object to the Report's findings that 1) "the [Second Amended] Complaint adequately alleged facts to support a plausible inference that the Special

Committee did not sincerely believe that the CPPIB [Canada Pension Plan Investment Board] offer represented the 'best value' and 'highest price reasonably available' to PEGI stockholders" (D.I. 91 at 1); 2) "the Report failed to consider whether the opinions were objectively false, as required by the Supreme Court's recent decision in *Omnicare* (which the Report does not cite)" (*id*. at 2); and 3) "the Section 20(a) claim is adequately pled against the Individual Defendants" (*id.*). The Court addresses each objection below.

### A.      Inferences Regarding the Special Committee

The Report determined that Plaintiffs plausibly alleged that the proxy materials contained at least two false statements.  (D.I. 15-16).  The first is in the Proxy Statement, which provided:

> [F]ollowing extensive negotiations, the Special Committee was able to increase the per share Merger Consideration offered by CPPIB to $26.75 in cash, which, after consultation with its financial advisors, the Special Committee believed was the highest that CPPIB would be willing to pay and *represented the best value reasonably available to our stockholders*[.]

(D.I. 90 at 15, citing D.I. 82-1 at 69 (Proxy Stmt. at 55)).  The second is in the February 26, 2020 Form 8-K, which represented that "[t]he Special Committee sought and believes it obtained the highest price reasonably available for Pattern Energy." (D.I. 76 ¶ 81).  As the Report noted, the SAC alleges that those statements were false because the Special Committee did not actually hold a sincere belief that CPPIB's offer represented the best reasonably available price for Pattern Energy. (D.I. 90 at 16).  The Pattern Energy Defendants disagree.

Drawing all inferences in favor of the non-moving party as required at this stage, the Court agrees with the Report that the SAC plausibly alleges that those two statements of opinion were false: it contains factual content that gives rise to a reasonable inference that the Special Committee did not sincerely believe that CPPIB's offer represented the "best value" and "highest price" reasonably available to shareholders.  Among other things, the SAC alleges facts that suggest that

the Special Committee and its advisors acknowledged that Brookfield's bid offered a better value and a higher price compared to the CPPIB deal.  The SAC also alleges facts – not disclosed in the proxy materials – permitting a reasonable inference that, at the time the Board voted to approve the deal with CPPIB, Brookfield remained willing to engage on more favorable terms.

### B.    *Omnicare Issues*

The Pattern Energy Defendants argue that the Report failed to consider *Omnicare, Inc. v. Laborers District Council Industrial Pension Fund*, 575 U.S. 175 (2015).  The Pattern Energy Defendants, however, did not raise the *Omincare* decision before Judge Hall: they did not cite *Omnicare* in their briefing, nor raise it oral argument.  This Court will not hear arguments made for the first time in objections to a Report when those objections could have and should have been made in the motion addressed by the Magistrate Judge.  *See* October 8, 2013 Standing Order for Objections Filed Under FED. R. CIV. P. 72.[8]

### C.    **Individual Defendants**

The Pattern Energy Defendants object to the Report's conclusion that the Section 20(a) claim is adequately pleaded against the Individual Defendants, arguing that Plaintiffs cannot allege a predicate Section 14(a) violation and because Plaintiffs fail to adequately allege that each Individual Defendant was a "control person" with respect to the challenged statements.  The Court disagrees.  The Court has already found that the SAC plausibly alleges a Section 14(a) violation.  Moreover, after reviewing the entirety of the record, the Court agrees that this argument was not

---

[8]     The Court notes that the Report addressed *Jaroslawicz v. M&T Bank Corp.* (3d Cir. 2020), which discusses *Omnicare* and related Supreme Court precedent at length.

fairly raised in the briefing on the motion and the Magistrate Judge properly declined to entertain the argument.[9]

## IV.   <u>CONCLUSION</u>

For the reasons stated above, the Pattern Energy Defendants' objections to the Report are OVERRULED and the Report is ADOPTED.  The Pattern Energy Defendants' Motion to Dismiss (D.I. 78) is GRANTED-IN-PART and DENIED-IN-PART and Riverstone's Motion to Dismiss (D.I. 79) is GRANTED.  A form of order will follow.

---

[9]     The Court also notes that the SAC sets out involvement of each Board and Officer Defendant in negotiating, reviewing, and approving the Merger Agreement and drafting and approving the Proxy.  (D.I. 76 ¶¶ 215-28).  *See also Universal Am. Corp. v. Partners Healthcare Sols. Holdings, L.P.*, 176 F. Supp. 3d 387, 398 (D. Del. 2016) (finding control when the complaint "spells out the major role that [the defendant] played in the sale" of the company, including negotiating the terms of the merger).