IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE PATTERN ENERGY GROUP INC., SECURITIES LITIGATION | ) ) ) | C.A. No. 20-275 (MN) (JLH) Class Action |

## MEMORANDUM OPINION

Sue L. Robinson, Brian E. Farnan, Michael J. Farnan, FARNAN LLP, Wilmington, DE – Liaison Counsel for Lead Plaintiffs and the Class

Andrew J. Entwistle, ENTWISTLE & CAPPUCCI LLP, Austin, TX; Vincent R. Cappucci, Arthur V. Nealon, Brendan J. Brodeur, Jonathan H. Beemer, Jessica A. Margulis, ENTWISTLE & CAPPUCCI LLP, New York, NY – Lead Counsel for Lead Plaintiff and the Class

Marc M. Seltzer, Krysta Kauble Pachman, SUSMAN GODFREY L.L.P., Los Angeles, CA – Of Counsel for the Class

A. Thompson Bayliss, April M. Ferraro, Christopher Fitzpatrick Cannataro, ABRAMS & BAYLISS LLP, Wilmington, DE; Alan S. Goudiss, K. Mallory Brennan, SHERMAN & STERLING LLP, New York, NY; Christian E. Myrold, SHEARMAN & STERLING LLP, San Francisco, CA – Attorneys for Defendants Pattern Energy Group Inc., Edmund John Phillip Browne, Michael Garland, Hunter Armistead, Daniel Elkort, Michael Lyon, Esben Pedersen, and Christopher Shugart

Matthew D. Stachel, PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP, Wilmington, DE; Jaren Janghorbani, Geoffrey Chepiga, PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP, New York, NY – Attorneys for Defendants Alan R. Batkin, Richard A. Goodman, Douglas G. Hall, Patricia M. Newson, and Mona K. Sutphen

March 27, 2023
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE**

Presently before the Court are the objections of Lead Plaintiffs Water Island Funds[1] (D.I. 236) to Magistrate Judge Hall's Report and Recommendation ("the Report") (D.I. 225), which recommended granting the Lead Plaintiffs' Motion for Class Certification (D.I. 107) and defined the class ("the Class"). Lead Plaintiffs object to the Report "to the extent it excluded from the class definition shareholders as of the record date who sold after the vote but prior to the merger." (D.I. 236 at 1). The Court has reviewed the Report (D.I. 225), Lead Plaintiffs' objections (D.I. 236) and the response thereto (D.I. 240), and the Court has considered *de novo* the objected-to portions of the Report and the relevant portions of the motion and related briefing (*see* D.I 107-109, 123, 124, 150–54, 156, 157, 159–62, 166). For the reasons set forth below, Lead Plaintiffs' objections are OVERRULED, the Report is ADOPTED,[2] the motion for class certification is GRANTED and the Class is defined as set forth therein.

---

[1] The Water Island Funds consist of The Arbitrage Fund; Water Island Merger Arbitrage Institutional Commingled Fund, L.P.; Morningstar Alternatives Fund a series of Morningstar Funds Trust; Litman Gregory Masters Alternative Strategies Fund; Columbia Multi-Manager Alternative Strategies Fund; Water Island Diversified Event-Driven Fund; Water Island LevArb Fund, L.P.; and Water Island Long/Short Fund (collectively, "the Water Island Funds" or "Lead Plaintiffs").

[2] The Report also recommended finding that the Water Island Funds satisfy the prerequisites for a class action under Rules 23(a) and 23(b)(3), that the Water Island Funds adequately represent the Class, and should be certified as the Class Representatives and that the Water Island Funds' counsel Entwistle & Cappucci LLP should be authorized to act as lead class counsel on behalf of the Class, along with liaison class counsel Farnan LLP and additional counsel Susman Godfrey L.L.P. No objections to these aspects of the Report were filed and upon review, the Court has found no clear error on the face of the record. Therefore, these recommendations in the Reports are adopted.

I.  **BACKGROUND**

In an earlier opinion (D.I. 97), the Court set forth the relevant facts regarding the parties, the proxy statement and the procedural history. The Court adopts and incorporates those sections of its earlier opinion as if fully set forth herein.

On May 5, 2022, Lead Plaintiffs filed a motion for class certification, asking the Court to certify a class consisting of:

> all persons and entities who held Class A common stock of Pattern Energy Group Inc. as of the January 31, 2020 record date for the merger with Canada Pension Plan Investment Board ("Merger") and were entitled to vote on the Merger, excluding Defendants, their immediate families and trusts and investment vehicles operated by them or for their benefit, and excluding Riverstone Holdings LLC and its affiliates, CBRE Caledon Capital Management and its affiliates, the Public Sector Pension Investment Board and its affiliates and any person or entity that received a legal or beneficial ownership interest in the surviving new entity that emerged from the Merger.

(D.I. 107 at 1). In the Report, Judge Hall concluded that Water Island Funds' claims under Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 should proceed on behalf of:

> All persons and entities who held Class A common stock of Pattern Energy Group Inc. as of the January 31, 2020 record date for the merger with Canada Pension Plan Investment Board ("Merger"), were entitled to vote on the Merger, and received the Merger consideration; excluding Defendants, their immediate families and trusts and investment vehicles operated by them or for their benefit, and excluding Riverstone Holdings LLC and its affiliates, CBRE Caledon Capital Management and its affiliates, the Public Sector Pension Investment Board and its affiliates, and any person or entity that received a legal or beneficial ownership interest in the surviving new entity that emerged from the Merger.

(D.I. 225 at 1-2). The recommended definition excludes from the proposed class those shareholders who owned shares as of the record date (January 31, 2020) but sold those shares prior to either the shareholder vote on the Merger (March 10, 2020) or the Merger close (March 16, 2020) ("the Selling Shareholders"). (D.I. 225 at 2 n.2).

Judge Hall found that "the Selling Shareholders weren't harmed by the Merger because they sold prior to the vote on the Merger and/or the close." *Id.* Given that the "theory of liability with respect to the selling shareholders is unmoored from the theory of liability underlying the Section 14(a) implied right of action and would extend the scope of such actions beyond that previously recognized by the Supreme Court," Judge Hall concluded that the Selling Shareholders had no ability to maintain their claims. (*Id.* at 3 n.2). Additionally, Judge Hall found that, even if the Selling Shareholders could bring a claim under Section 14(a), their inclusion in the Class "would destroy predominance as to the elements of causation and damages." (*Id.*)

In their objections, Lead Plaintiffs changed their requested class definition from "all persons and entities who held Class A common stock of Pattern Energy Group Inc. as of the January 31, 2020 record date" to "all persons and entities who held Class A common stock of Pattern Energy Group Inc. as of the January 31, 2020 record date for the merger with Canada Pension Plan Investment Board ("Merger"), were entitled to vote on the Merger, and ***who either received Merger consideration or sold record date shares after the vote on the Merger but before the close of the Merger;*** excluding Defendants, their immediate families and trusts and investment." (D.I. 236 at 3) (emphasis in original). The bolded language was not explicitly proposed in the original briefing.

## II.  LEGAL STANDARDS

"Rule 23(a) states four threshold requirements applicable to all class actions: (1) numerosity (a "class [so large] that joinder of all members is impracticable"); (2) commonality ("questions of law or fact common to the class"); (3) typicality (named parties' claims or defenses "are typical . . . of the class"); and (4) adequacy of representation (representatives "will fairly and adequately protect the interests of the class")." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). Rule 23 "does not set forth a mere pleading standard" but, instead, "[a] party seeking class

certification must affirmatively demonstrate his compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

"The adequacy requirement has two components: (1) concerning the experience and performance of class counsel; and (2) concerning the interests and incentives of the representative plaintiffs." *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 181 (3d Cir. 2012) (citing Fed. R. Civ. P. 23(a)). "[T]he linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class." *Id.* at 183.

When a plaintiff seeks to certify a class under Rule 23(b)(3), it must also show by a preponderance of the evidence that (1) common questions of law and fact predominate over questions affecting individuals, and (2) a class action is superior to other available methods. Fed. R. Civ. P. 23 (b)(3); *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013); *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 353-54 (3d Cir. 2013). "[T]he predominance criterion is far more demanding" than the "commonality" requirement of Rule 23(a). *Amchem Prods.*, 521 U.S.at 623-24.

### III.   DISCUSSION

#### A.   Cause of Action under Section 14(a)

As noted above, Judge Hall recommended a class definition that includes only those shareholders who received Merger consideration, a definition that includes all Lead Plaintiffs. In its objections, Lead Plaintiffs seek to include shareholders who owned shares as of the record date who sold those shares after the vote on the Merger but before the close of the Merger ("the Revised Selling Shareholders").[3]  According to Lead Plaintiffs, the Revised Selling Shareholders were

---

[3]   The Court is concerned that to some extent Lead Plaintiffs are making a different argument (one that purports to be "narrower") than the one presented to Judge Hall.  Objections to a Report and Recommendation are generally not a "do over" during which a party may rethink its original strategy.  Having reached for too much in the arguments to the

4

damaged by the false proxy because the price they received from selling their shares on the market was less than it would have been if the true state of affairs was known. (*See, e.g.*, D.I. 150 at 8 ("Had accurate information about the availability of Brookfield's far superior bid been disclosed (or the Proxy not been issued), shareholders who sold before the Merger close would have been able to sell their shares for more than they did . . ..")).

The Court rejects Lead Plaintiffs' request to include the Revised Selling Shareholders in the Class. As the Report noted, Lead Plaintiffs are proceeding on a Section 14(a) claim, not a Section 10(b) claim. (D.I. 225 at 2 n.2). A shareholder who sells his shares can bring a Section 10(b) claim for damages based on losses sustained as the result of a company's materially false public statements. *See, e.g.*, *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341 (2005) (listing elements of a § 10(b) claim). But shareholders can recover under Section 14(a) only when "the votes for a specific corporate transaction requiring shareholder authorization, such as a corporate merger, are obtained by a false proxy statement, and **that transaction was the direct cause of the pecuniary injury for which recovery is sought**." *Gen. Elec. Co. by Levit v. Cathcart*, 980 F.2d 927, 933 (3d Cir. 1992) (emphasis added).

Here, Lead Plaintiffs claim that the Revised Selling Shareholders "would have been able to sell their shares for more than they did" if the proxy had disclosed "accurate information." (D.I. at 8). Notably, even if Lead Plaintiffs' assertions were true, that would not be the result of the Merger itself, which had yet to take place when the shares were sold. Moreover, as Judge Hall determined, no case has held that the scope of Section 14(a) extends this far. (D.I. 225 at 2 n.2). Indeed, the only case cited that considered Lead Plaintiffs' Section 14(a) theory rejected it and

---

magistrate judge, the propriety of then presenting different – perhaps even more or reasonable – arguments to the district court in the form of objections is dubious.

excluded from the class those shareholders who sold prior to the merger's close. *In re Willis Towers PLC Proxy Litig.*, No. 17–1338, 2020 WL 5361582, at *12 (E.D. Va. Sept. 4, 2020) ("[A]ny proposed Class member who sold the entirety of their Towers stock before the closing of the Merger, the relevant transaction, did not suffer any cognizable loss as a result of the Merger allegedly obtained through the Proxy's misrepresentations or omissions.").[4]

Plaintiff's citation to several Supreme Court cases – none of which held that a shareholder could recover under Section 14(a) for damages not caused by the transaction authorized by the allegedly deficient proxy statement – is unavailing. Lead Plaintiffs first argue that the Supreme Court's recognition in *J. I. Case Company v. Borak*, 377 U.S. 426 (1964) that misstatements in a proxy statement are a "deceit practiced on the stockholders as a group" suggests that Congress must have wanted to provide stockholders who could have been deceived by the proxy statement with a remedy under Section 14(a), regardless of whether the stockholder was harmed by the closing of the transaction itself. (D.I. 236 at 3-4). In *Borak*, however, the Court addressed whether there was a private right of action for damages under Section 14(a) based on allegations that a "merger would not have been approved but for the false and misleading statements in the proxy solicitation material; and that Case stockholders were damaged thereby." 377 U.S. at 430. Unlike the Revised Selling Shareholders here, in *Borak*, the shareholders alleged they were damaged by the merger itself, not by the sale of their shares prior to the merger. Although the Supreme Court explained that Section 14(a) was designed to prevent management from "obtaining authorization

---

[4] Contrary to Plaintiffs' assertion (D.I. 236 at 9), *Willis Towers* did not state that its holding was contingent on either the lack of opportunity cost damages in the Fourth Circuit or any defects in the damages model put forward by the shareholders. Instead, the controlling fact was that "[t]he Proxy solicitations, the essential link in the Merger's approval, would not have caused [selling shareholders] some economic loss because they did not own shares as of the Merger's consummation." 2020 WL 5361582 at *12.

for corporate action" by means of a deceptive proxy statement, *id*. at 431, it does not follow that shareholders who sell before the occurrence of the improperly authorized corporate action – and thus were not harmed by the action – have claims under Section 14(a). Indeed, as Defendant points out, "nowhere in *Borak* does the Supreme Court suggest that Section 14(a) permits a claim for damages that did not result from an improper authorization."[5] (D.I. 240 at 3).

Lead Plaintiffs next argue that in *Mills v. Electric Auto-Lite Company*, 396 U.S. 375 (1970) and *Virginia Bankshares v. Sandberg*, 501 U.S. 1083 (1991), the Supreme Court did not "impose[] an additional requirement that the consideration forming the basis for damages be Merger consideration or that a record date holder continue to hold through the merger." (D.I. 236 at 5). Contrary to Plaintiffs' argument, however, *Mills* and *Virginia Bankshares* did not hold that the only "causal" requirement for a Section 14(a) claim is that the proxy solicitation was necessary to effectuate the transaction. Indeed, as those decisions suggest, there is another causation requirement: that the shareholders were damaged by the transaction itself. *Mills*, 396 U.S. at 386–88 (discussing various remedies available to shareholders for damages from the merger); *Virginia Bankshares*, 501 U.S. at 1099 (shareholders must demonstrate causal connection to "damages claimed from the merger subject to complaint"); *see also Gen. Elec.*, 980 F.2d at 933 (shareholders must demonstrate that "the transaction was the direct cause of the pecuniary injury for which recovery is sought"); *see also Willis Towers*, 2020 WL 5361582 at *12 (E.D. Va. Sep. 4, 2020) (no injury-in-fact for selling shareholders because they "did not suffer any cognizable loss as a result of the Merger"); *Hurtado v. Gramercy Prop. Tr.*, 425 F. Supp. 3d 496, 515 (D. Md. 2019)

---

[5] As Defendants argue, "[u]nder [Lead] Plaintiffs' theory of liability, selling shareholders would have the right to bring monetary damages claims under Section 14(a), even if a transaction had been voted down and never closed (*i.e.*, where the alleged misstatements had no impact on any alleged improper authorization)." (D.I. 3-4).

7

(shareholders must demonstrate that "the proxy solicitation . . . was an essential link in the accomplishment of the transaction that resulted in the economic loss" (citing *Mills*, 396 U.S. at 385)). Accordingly, the Revised Selling Shareholders have no right of action under Section 14(a).

### B. The Effect of Including the Revised Selling Shareholders in the Class

Lead Plaintiffs object that including the Revised Selling Shareholders in the Class would not destroy predominance. The Court disagrees. Broadening the Class to include stockholders who sold prior to consummation of the Merger runs afoul of Rule 23(b)(3)'s predominance standard, which requires that "a ***common*** question of damages" be answered "through ***common*** evidence using a ***common*** measure of damages acceptable under § 14(a)." *See Willis Towers*, 2020 WL 5361582, at *9 (emphasis in original).

First, Plaintiffs cannot demonstrate, with respect to the Revised Selling Shareholders, that the Merger "transaction was the direct cause of the pecuniary injury for which recovery is sought." *Gen. Elec.*, 980 F.2d at 933. The Third Circuit has made clear that transaction causation cannot be established merely by pointing to alleged omissions in a proxy where "the shareholders' votes did not authorize the transactions that caused the losses." *Id.* (votes to reelect directors who subsequently engaged in alleged mismanagement did not establish transaction causation). Applying the same principle here, Plaintiffs cannot introduce class-wide evidence to prove that the Merger caused the Revised Selling Shareholders harm when they sold before it was known whether the transaction would close.

Second, unlike the stockholders who exchanged their Pattern Energy Group Inc. shares for the Merger consideration, which was fixed at $26.75 per share, the prices at which the Revised Selling Stockholders sold varied throughout each day between the shareholder vote and the Closing Date. Those prices would have been impacted not only by the transaction price and the likelihood of closing factors, but also other factors that may be unique to any given day. Lead

8

Plaintiffs do not address these factors.  Accordingly, the Court agrees that inclusion of the Revised Selling Shareholders would destroy predominance as to the elements of causation and damages.

## IV.     CONCLUSION

For the reasons stated above, Lead Plaintiffs' Limited Objections to Report & Recommendation (D.I. 236) are OVERRULED, the Report and Recommendation (D.I. 225) is ADOPTED, Lead Plaintiffs' Motion for Class Certification (D.I. 107) is GRANTED, and the Class definition set forth in the Report and Recommendation is ADOPTED.  An appropriate order will follow.